GARCIA, J.
*477 ***328 The New York City Human Rights Law makes clear that punitive damages are available for violations of the statute, but does not specify a standard for when such damages should be awarded. The Second Circuit has, by certified question, asked us to determine the applicable standard. We conclude that, consistent with the New York City Council's directive to construe the New York City Human Rights Law liberally, the common-law standard as articulated in Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 203-204, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990) applies.
***329 Accordingly, a plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is "a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard" (see Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 203-204, 551 N.Y.S.2d 481, 550 N.E.2d 930 [1990] [internal quotation marks omitted] ).
I.
Plaintiff, a physical therapy aide, sued her former employer and two supervisory employees for sex and pregnancy discrimination under title VII of the Civil Rights Act of 1964 ( 42 U.S.C. §§ 2000e [k]; 2000e-2 [a] ), the Family Medical Leave Act ( 29 U.S.C. § 2601 ), the New York State Human Rights Law ( Executive Law § 296[1][a] ), and the New York City Human *478 **88 Rights Law (Administrative Code of City of N.Y. § 8-107[1][a] ) (NYCHRL) in the United States District Court for the Eastern District of New York. At trial, plaintiff's counsel requested a jury instruction on punitive damages under the NYCHRL. In considering the request, the court applied to the NYCHRL the standard for punitive damages found in title VII, namely, whether plaintiff had submitted evidence that her employer had intentionally discriminated against her with malice or reckless indifference to her protected rights, and denied the instruction. The court stated,
"[t]here is nothing here that supports punitive damages ....
"There is no showing of malice, reckless indifference, that there was an intent to violate the law. They may have violated the law, which is what you are going to try to prove, but there is certainly no evidence of intent."
The jury found defendants liable for pregnancy discrimination and awarded plaintiff $10,500 in compensatory damages and $50,000 in pain and suffering.
Plaintiff appealed, arguing that the district court erred in importing the title VII standard. After noting that the NYCHRL "does not articulate a standard for a finding of employer or employee liability for punitive damages," the Second Circuit acknowledged that the passage of the Local Civil Rights Restoration Act of 2005 (Administrative Code § 8-130[a] [Restoration Act] ) and subsequent related amendments, ***330 calling for a liberal construction of all provisions of the NYCHRL in all circumstances, called into question the Second Circuit's 2001 holding in Farias v. Instructional Sys., Inc., 259 F.3d 91 (2d Cir.2001) that title VII's standard for punitive damages applies to the NYCHRL ( Chauca v. Abraham, 841 F.3d 86, 90-92 [2d Cir.2016] ). The Second Circuit noted that the Restoration Act "otherwise provides no specific guidance" regarding how to interpret the NYCHRL where the statute is silent as to the applicable standard ( id. at 87-88 ). Accordingly, the Second Circuit certified the following question: "What is the standard for finding a defendant liable for punitive damages under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502 ?" ( Id. at 95.)
II.
The NYCHRL prohibits an employer from "refus[ing] to hire" or "discharg[ing] from employment" anyone because of their gender (Administrative Code § 8-107[1][a][2] ).[1] The NYCHRL provides for compensatory and punitive damages and other remedies against employers and employees found directly or vicariously liable for discrimination, a provision the City Council included in the NYCHRL in 1991 (Administrative Code § 8-502[a] ). Employers exposed to a punitive damages charge can mitigate punitive damages based on vicarious liability where they can prove the existence of certain policies established to deter discrimination (see id. § 8-107[13][d] - [e] ). Despite the clear intention to make punitive damages available, there is no provision in the NYCHRL setting a standard for imposing them. In light of this silence in the statute, we must now determine what standard applies for awarding punitive damages under the NYCHRL.
A.
The "starting point in any case of interpretation must always be the language *479 **89 itself, giving effect to the plain meaning thereof" ( Matter of Shannon, 25 N.Y.3d 345, 351, 12 N.Y.S.3d 600, 34 N.E.3d 351 [2015] ). It is a well-established principle of statutory construction that words of technical or special meaning are used by the legislature, "not loosely, but with regard for their established legal significance, and in construing a statute a technical meaning should ***331 be given to technical words, unless a contrary meaning is unmistakably intended" ( People v. Wainwright, 237 N.Y. 407, 412, 143 N.E. 236 [1924] ; see McKinney's Cons. Laws of N.Y., Book 1, Statutes § 233, Comment ["when a word having an established meaning at common law is used in a statute, the common law meaning is generally followed"] ).
"Punitive damages"-as used in section 8-502 -is a legal term of art that has meaning under the New York common law. Punitive damages are intended not only to "punish the tortfeasor" but also to "deter future reprehensible conduct" ( Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 489, 836 N.Y.S.2d 509, 868 N.E.2d 189 [2007] ; Hartford Acc. & Indem. Co. v. Village of Hempstead, 48 N.Y.2d 218, 226, 422 N.Y.S.2d 47, 397 N.E.2d 737 [1979] ). In our 1990 decision in Home Ins. Co., we articulated the punitive damages standard as "essentially ... conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard" ( 75 N.Y.2d at 203-204, 551 N.Y.S.2d 481, 550 N.E.2d 930 [citations and internal quotation marks omitted] ).
Plaintiff, relying almost exclusively on the legislative intent of the NYCHRL and the Restoration Act, argues that she should be entitled to a punitive damages charge upon any showing of liability. Under plaintiff's approach, any discrimination case that goes to a jury would be accompanied by a punitive damages charge without any guidance as to when to award such damages. In plaintiff's view, punitive damages should be available in any situation where compensatory damages are available; the required showing of entitlement to either form of damages would be identical. The dissent agrees, and argues that the Restoration Act's liberal construction principles mandate a holding that "a punitive damages charge is automatic on a finding of liability" (dissenting op. at 338, 67 N.Y.S.3d at 94, 89 N.E.3d at 484).
We reject that approach. Punitive damages differ conceptually from compensatory damages and are intended to address "gross misbehavior" or conduct that "wilfully and wantonly causes hurt ... to another" ( Thoreson v. Penthouse Intl., 80 N.Y.2d 490, 497, 591 N.Y.S.2d 978, 606 N.E.2d 1369 [1992] ). Indeed, this Court has noted that "[n]ot only do [punitive damages] differ in purpose and nature from compensatory damages, but they may only be awarded for exceptional misconduct which transgresses mere negligence" ( Sharapata v. Town of Islip, 56 N.Y.2d 332, 335, 452 N.Y.S.2d 347, 437 N.E.2d 1104 [1982] ). Punitive damages represent punishment for wrongful conduct that goes beyond mere negligence and are warranted only where aggravating factors demonstrate an additional level of wrongful ***332 conduct (see Home Ins. Co., 75 N.Y.2d at 203-204, 551 N.Y.S.2d 481, 550 N.E.2d 930 ). Accordingly, there must be some heightened standard for such an award.
Plaintiff's assertion that the mitigation provisions discussed in section 8-107(13) support the argument that punitive damages are available to any employment discrimination plaintiff, without the need to show a heightened level of culpability, lacks merit. This section provides a way for an employer, when faced with vicarious *480 **90 liability, to mitigate punitive damages, where they are otherwise warranted, if certain factors are established. Moreover, as the Second Circuit noted, that section applies only to employers' vicarious liability once the punitive damages standard has been met and cannot be read to address the standard itself (see Chauca, 841 F.3d at 91 n. 3 ). Nothing in that provision requires a punitive damages charge whenever liability, vicarious or direct, is demonstrated. Indeed, the dissent's assertion that a punitive damages charge is "automatic" is not a "reasonably possible" interpretation of the statute (dissenting op. at 343, 67 N.Y.S.3d at 97, 89 N.E.3d at 487).
B.
Defendants contend that the title VII standard for punitive damages, employed by the Second Circuit in Farias, should apply (see 259 F.3d at 102 ). We reject this approach as contrary to the intent of the Council.
In Farias, the Second Circuit held that a plaintiff must show that a defendant engaged in intentional discrimination with malice or reckless indifference to a protected right in order to obtain punitive damages under the NYCHRL ( id. at 101 ; see also Kolstad v. American Dental Assn., 527 U.S. 526, 529-530, 119 S.Ct. 2118, 144 L.Ed.2d 494 [1999] ). The title VII standard requires "intentional discrimination ... with malice or with reckless indifference to the ... protected rights of an aggrieved individual" and the Supreme Court has specified that "[t]he terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination" ( Kolstad, 527 U.S. at 529-530, 535, 119 S.Ct. 2118 [internal quotation marks omitted] ).
However, in 2005, subsequent to Farias, the City Council passed the Restoration Act, amending the Administrative Code of the City of New York to ensure that "[t]he provisions of [the NYCHRL] shall be construed liberally ... regardless of whether federal or New York state civil and human rights laws ... have been so construed" (Administrative Code § 8-130[a] ).
***333 Expressing concern that the NYCHRL was being too strictly construed, the amendment established that similarly worded state or federal statutes may be used as interpretive aids only to the extent that the counterpart provisions are viewed "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise," and only to the extent that those state or federal law decisions may provide guidance as to the "uniquely broad and remedial purposes" of the local law (Local Law No. 85 [2005] of City of N.Y. §§ 1, 7). In a report on the amendments (see Rep. of Comm. on Gen. Welfare, Aug. 17, 2005, 2005 N.Y. City Legis. Ann. at 537), the Committee on General Welfare rejected prior reasoning by this Court that the City Council "would need to amend the City HRL to specifically depart from a federal doctrine if it wanted to do so" ( Bennett v. Health Mgt. Sys., Inc., 92 A.D.3d 29, 35, 936 N.Y.S.2d 112 [2011] ; McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 433-434, 788 N.Y.S.2d 281, 821 N.E.2d 519 [2004] ). As a result, this Court has acknowledged that all provisions of the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" ( Albunio v. City of New York, 16 N.Y.3d 472, 477-478, 922 N.Y.S.2d 244, 947 N.E.2d 135 [2011] ).
In 2016, the City Council again amended the construction provision of the NYCHRL to provide additional guidance, *481 **91 identifying cases, including Albunio, that had "correctly understood and analyzed the liberal construction requirement ... and that have developed legal doctrines accordingly that reflect the broad and remedial purpose of this title" (Administrative Code § 8-130[c] ). The Council identified these cases in order to, among other things, "illustrate best practices when engaging in the required analysis" and to "endorse the legal doctrines where they were developed pursuant to liberal construction analyses" (New York City Council, Committee on Civil Rights, Committee Report of the Governmental Affairs Division at 9 [Mar. 8, 2016] ).
In contrast to the approach in Kolstad, the standard articulated in Home Ins. requires neither a showing of malice nor awareness of the violation of a protected right, representing the lowest threshold, and the least stringent form, for the state of mind required to impose punitive damages. By implementing a lower degree of culpability and eschewing the knowledge requirement, applying this standard adheres to the City Council's liberal construction mandate while remaining ***334 consistent with the language of the statute (see Administrative Code § 8-502[a] ).[2]
Moreover, NYCHRL violations, by their very nature, inflict serious harm "to both the persons directly involved and the social fabric of the city as a whole" (Rep. of Comm. on Gen. Welfare, Local Law No. 85 [2005], 2005 N.Y. City Legis. Ann. at 537). The standard for punitive damages articulated in Home Ins., while requiring an appropriate showing of heightened culpability for punitive damages consistent with the language of the provision at issue, is nevertheless properly reflective of the serious and destructive nature of the underlying discriminatory conduct and the goal of deterring "future reprehensible conduct" ( Ross, 8 N.Y.3d at 489, 836 N.Y.S.2d 509, 868 N.E.2d 189 ). Furthermore, subjecting NYCHRL defendants to punitive damages under this standard encourages nondiscriminatory behavior and the development and application of appropriate employment criteria. In sum, this approach is the most liberal construction of the statute that is "reasonably possible" and furthers the purpose of the NYCHRL.
IV.
We hold, therefore, that the standard for determining punitive damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard" (see Home Ins. Co., 75 N.Y.2d at 203-204, 551 N.Y.S.2d 481, 550 N.E.2d 930 ).[3]
Accordingly, the certified question should be answered in accordance with this opinion.

Discrimination on the basis of pregnancy is a form of gender discrimination (see Elaine W. v. Joint Diseases N. Gen. Hosp., 81 N.Y.2d 211, 597 N.Y.S.2d 617, 613 N.E.2d 523 [1993] ).

This holding does not affect the common-law standard for punitive damages in any context beyond the NYCHRL.

As noted earlier, the reference to "rights" here does not impose a requirement that the wrongdoer know (s)he is violating the law.